IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| SIENNA THOMAS, SABRINA GREEN-FOG, YEIMY SAMBRANO, SHYKIRA SCOTT, CONSTANCE MATOUSEK, ALEXANDER MATOUSEK, and HALEY MATOUSEK, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>CITI TRENDS, INC.,<br><br>      Defendant. | CIVIL ACTION NO.: 4:23-cv-175 |

**O R D E R**

This matter is before the Court on Defendant Citi Trends, Inc.'s Motion to Compel Individual Arbitration and Stay Action,[1] (doc. 37), and Motion to Dismiss Plaintiffs Alexander Matousek and Haley Matousek's Consolidated Class Action Complaint, (doc. 36). According to the Amended Complaint, Defendant mishandled Plaintiffs' personal identifiable information ("PII"), resulting in a data breach. (Doc. 31.) Plaintiffs filed this putative class action suit against Defendant seeking, among other things, class certification and damages. (Id. at pp. 49–52.) Defendant then filed the at-issue Motion to Compel Arbitration and Motion to Dismiss. (Docs. 37 & 36.) The Motions have been fully briefed. (Docs. 36-1, 37-1, 40, 41, 47 & 48.) For the reasons below, the Court **GRANTS** Defendant's Motion to Compel Individual Arbitration and Stay

---

[1] Originally a Motion to Compel Individual Arbitration and Dismiss or Stay Action, Defendant later withdrew the dismissal request in light of the United States Supreme Court's recent ruling in Smith v. Spizzirri, 601 U.S. 472, 478 (2024). (See doc. 47, p. 2 n.1.) The Court held in Smith that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the [Federal Arbitration Act] compels the court to stay the proceeding." 601 U.S. at 478.

Action, (doc. 37), and **DENIES without prejudice** Defendant's Motion to Dismiss Plaintiffs Alexander Matousek and Haley Matousek's Consolidated Class Action Complaint, (doc. 36).

## BACKGROUND

### I. Factual Background

The following facts are alleged in the Amended Complaint. (Doc. 31.) Defendant Citi Trends is a clothing retailer with its principal place of business in Savannah, Georgia. (Id. at pp. 2, 5.) All Plaintiffs are former employees of Defendant ("Employee Plaintiffs"), except for Alexander Matousek and Haley Matousek ("Dependent Plaintiffs"), who are the children of former employee Constance Matousek. (Id. at pp. 28–35.) The PII that Defendant obtained from current and former employees included their names, Social Security numbers, birth dates, financial account numbers, and other sensitive information. (Id. at pp. 1–2.) Plaintiffs and the putative class members were among those whose PII Defendant obtained. (Id. at p. 2.) Defendant required Plaintiffs to provide this PII in order to be an employee or to obtain certain employment-related benefits. (Id. at p. 6.) While collecting the PII, Defendant promised to provide confidentiality and security for the data. (Id.) Defendant's Privacy Policy also provides that: "[w]e have implemented reasonable measures designed to secure your personal information from accidental loss and from unauthorized access, use, alteration, and disclosure." (Id.) Yet Defendant stored the PII unencrypted and unredacted in an internet-accessible environment on Defendant's network. (Id. at pp. 2–3.)

Defendant and each Employee Plaintiff entered into a Mutual Agreement to Arbitrate ("Arbitration Agreement"), which consisted of the following language:

> To facilitate dispute resolution, the Company has developed this binding arbitration agreement ("Agreement") to resolve disputes that are not disposed of through more informal means.

The Company and the undersigned including his/her heirs, executors, administrators, successors and assigns (collectively referred to as "you" or "your") (you and the "Company" may be collectively referred to as the "Parties") hereby enter into this Agreement and expressly agree to be bound by its terms.

In consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, you and the Company agree as follows:

**1. The Mutual Agreement to Arbitrate: Overview** Except for the claims set forth in the paragraph below, you are required to arbitrate any and all disputes, claims, or controversies ("claim") against the Company that could be brought in a court including, but not limited to, those you may have against Company, its current or former affiliates, subsidiaries, divisions, successors, assigns and its or their agents, officers, directors, and/or employees, and/or claims that arise out of or relate to your employment (including but not limited to all claims relating to your application for employment or hiring, your employment, the terms and conditions of your employment, any leave of absence, wages, compensation, and/or the cessation of employment).  This Agreement to arbitrate includes, but is not limited to, claims under [various federal and state laws]; or any other federal, state, or local law, ordinance or regulation based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses or relief, including attorney's fees. Accordingly, all claims which could be pursued in court instead must be pursued in arbitration.

Likewise, the Company has a reciprocal obligation to arbitrate any covered claim against you and also agrees to be bound by the terms of this Agreement regarding any matter covered herein.

. . . .

**3. Class/Collection Action Waiver** This Agreement requires all claims to be pursued on an individual basis only, and not as part of a representative, class, or collective action and arbitration on an individual basis is the exclusive remedy for those claims.  You and the Company hereby waive all rights to (i) commence, or be a party to, any class, representative or collective claims; or (ii) jointly bring any claim against each other with any other person or entity.  You and the Company must pursue any claim on an individual basis only, including claims alleging a pattern and practice of unlawful conduct.  In addition, the inability to join others in a claim for pattern and practice violations shall not by itself constitute a bar to the pursuit of such a claim.  The arbitrator shall have no authority to consolidate the claims or multiple individuals, or otherwise agree to hear the claims of multiple individuals in a single action.

Lastly, nothing herein limits a party's right and the rights of others to collectively challenge the enforceability of this Agreement, including the

class/representative/collective action waiver. Notwithstanding, the Company will assert that the parties have agreed to pursue all claims individually in the arbitral forum and may ask a court to compel arbitration of each individual's claims. To the extent that the filing of such an action is concerted activity protected under the National Labor Relations Act, such filing will not result in threats, discipline or discharge.

**4. Severability and Related Issues** The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable, except any determination as to the enforceability of the class, collective, and representation action waiver shall be made solely by a court. If a court rejects the provision barring class, collective, and representative action waiver, or any portion of such a provision, then the claim not subject to the waiver shall proceed in court, subject to any appeal of the court's ruling, and subject to litigation and applicable defenses, including those relating to class certification. With the exception of the class/collective action waiver as stated above, the arbitrator shall modify or amend this Agreement to cure any provision or portion of provision which the arbitrator has deemed unenforceable. This Agreement shall be self-amending; meaning if by applicable law a provision is deemed unlawful or unenforceable that provision and the Agreement automatically, immediately and retroactively shall be amended, modified, and/or altered to be enforceable. If this Agreement is determined to be unenforceable and cannot be amended to be enforceable or if a claim is found not to be subject to this Agreement, such matters shall be subject to a non-jury trial in the federal or state court that has jurisdiction over the matter. The arbitrator shall have no power under this Agreement to modify or alter the Agreement so as to permit the arbitrator to consolidate claims and/or to hear a class, collective, or representative action.

. . . .

**6. Arbitration Process**

. . . .

    b. <u>Payment of Arbitration Fees and Costs</u> The Company will pay 100% of the Arbitration Firm's fees as well as the arbitrator's fees and expenses. The Company also will pay (or reimburse you) for 100% of any filing fees that the Arbitration Firm may charge to initiate arbitration. Each party shall otherwise bear its own costs and fees associated with the arbitration including, but not limited to, attorneys' fees and the costs and fees of responding to discovery requests.

    . . . .

g. <u>Authority of Arbitrator</u> The arbitrator shall be authorized to make awards including any remedy or relief provided by statute or common law under which the claim or dispute arises. However, the arbitrator shall have no authority to make awards beyond said remedy or relief. The arbitrator may award reasonable attorneys' fees and expenses only if expressly permitted by the applicable statute or law. In the absence of such an express requirement, the arbitrator shall not have the authority to award attorneys' fees and expenses to either party. The arbitrator shall not consider any claim that is barred by any applicable statute of limitations or otherwise raised in an untimely fashion as provided by applicable law. In reaching a decision, the arbitrator shall be bound by the law and applicable legal precedent and shall have no power to vary from said law and precedent. The arbitrator shall have no authority to consolidate claims and/or to arbitrate a collective, representative or class claim/action. Similarly, the arbitrator shall have no authority to make any determination as to the enforceability of this Agreement's class/collective action waiver.

. . . .

**7. <u>Other Issues</u>**

a. <u>Jury Waiver</u> You and the Company expressly waive your right to a trial by jury for all claims covered by this Agreement. In addition, to the extent permitted by applicable law, by signing below, you also waive your right to a trial by jury with respect to those claims.

b. <u>Choice of Law</u> This Agreement shall be deemed to be made and entered into in the State of Georgia, and shall in all respects be interpreted, enforced and governed under the laws of Georgia, without giving effect to any choice or conflict of laws principles.

c. <u>Federal Arbitration Act</u> This Agreement is governed by the Federal Arbitration Act ("FAA") and involves a transaction in interstate commerce.

. . . .

e. <u>Condition of Employment</u> It is condition of your employment by the Company that you agree to be bound by the terms of this Agreement.

f. <u>Survival</u> This Agreement, including all subparts, survives the termination of your employment with the Company.

. . . .

**8. <u>Receipt and Acknowledgement</u>** By your signature below, you acknowledge receipt of this Arbitration Agreement. You also acknowledge that this Agreement

> is a legal document which, among other things, requires you to arbitrate, [sic] all claims you may have now or in the future with the Company, which otherwise could be brought in court[.]

(Doc. 37-3; see also docs. 37-4, 37-5, 37-6, 37-7, 37-8, 37-9, 37-10, 37-11 & 37-12.)

On January 14, 2023, Defendant learned of a data breach in which an unknown actor accessed Employee Plaintiffs' PII. (Doc. 31, p. 2.) Employee Plaintiffs' PII was accessed, stolen, and sold on the dark web. (Id. at pp. 8–9.) One Plaintiff, Sabrina Green-Fogg, had a bank account falsely opened in her name in January 2023. (Id. at p. 31.) On June 22, 2023, Defendant sent Employee Plaintiffs a letter informing them of this breach. (Id. at p. 7.) The letter noted, "[w]hile we do not have any evidence that anyone has actually obtained and misused your information, we are notifying you out of an abundance of caution that the potentially impacted files may have included your [PII that] you may have shared with us in connection with your employment." (Id. at pp. 7–8.)

## II.    Procedural History

Plaintiffs sued Defendant in this Court on June 27, 2023, (doc. 1), and filed an Amended Complaint on February 15, 2024, (doc. 31). Plaintiffs allege in their Amended Complaint that, because of the data breach, they "have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); (d) diminution of value of their PII; and (e) the continued risk to their PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Citi Trends fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' PII." (Doc. 31, p. 22.) Plaintiffs contend that they "now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights." (Id. at p. 18.) Plaintiffs seek

to represent the class of "[a]ll individuals whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant in June 2023 . . . . " (Id. at p. 36.)  On behalf of this prospective class, Plaintiffs asserted these claims against Defendant: negligence (Count I); negligence per se (Count II); unjust enrichment (Count III); and a declaratory judgment (Count IV).  (Id. at pp. 41–49.)

On March 22, 2024, Defendant filed two motions: Motion to Compel Individual Arbitration and Stay Action, (doc. 37), and Motion to Dismiss Dependent Plaintiffs' Consolidated Class Action Complaint, (doc. 36).  Plaintiffs filed Responses in Opposition to both Motions, (docs. 40, 41), and Defendant filed Replies to each of those Responses, (docs. 47, 48).

## DISCUSSION

**I.     Defendant's Motion to Compel Arbitration**

In Defendant's Motion to Compel Individual Arbitration and Stay Action, Defendant argues that "Plaintiffs' claims should be arbitrated" because they "are subject to Employee Plaintiffs' arbitration agreements . . . . " (Doc. 37-1, p. 2.)  Further, Defendant contends that "if there is any doubt whether Plaintiffs' claims are subject to arbitration, that issue should be resolved by an arbitrator, not this Court." (Id. at p. 3.)  Plaintiffs, rather, argue that "the class action waiver is unconscionable and unenforceable and Plaintiffs' claims must proceed in this Court." (Doc. 40, p. 1.)

The Arbitration Agreements here provide that they are governed by the Federal Arbitration Act ("FAA"). (Doc. 37-3, p. 7.)  The FAA "embodies a liberal federal policy favoring arbitration agreements."  Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and internal quotation marks omitted).  Accordingly, "the [FAA] requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify

7

with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." Epic Sys. Corp. v. Lewis, 584 U.S. 497, 506 (2018) (internal quotations and emphasis omitted). On a motion to compel arbitration, a court undertakes a two-step inquiry to determine (1) "whether the parties[] agree[d] to arbitrate" the dispute in question and, if they did, (2) "whether legal constraints external" to their agreement foreclose arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). The first step requires courts to determine whether a given dispute falls within the scope of a valid arbitration agreement. Id. at 626–28. In making this determination, the FAA instructs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 626 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)). If a court finds the parties agreed to arbitrate the dispute, then, under the second step, the party opposing arbitration must show that external legal constraints nonetheless make the claims unsuitable for arbitration. Id. at 628; see also Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

The FAA provides that an arbitration clause for a "contract evidencing a transaction involving commerce" is enforceable except where "such grounds . . . exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. In other words, an arbitration agreement is "on an equal footing with other contracts" and is enforceable unless a "generally applicable" principle of contract law indicates otherwise. Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1231 (11th Cir. 2012) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)); see also Caley, 428 F.3d at 1371. Courts accordingly look to the applicable state law governing contracts to determine whether an arbitration agreement is enforceable. See Bazemore v. Jefferson Cap.

Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting Caley, 428 F.3d at 1368). Here, the Arbitration Agreement signed by each Employee Plaintiff provides that it is governed by Georgia law. (Doc. 37-3, p. 7.)

If, after both steps, a court finds the arbitration agreement is enforceable, the traditional rule was that the court could compel arbitration and either stay or dismiss the suit. See Lambert v. Austin Indus., 544 F.3d 1192, 1195 (11th Cir. 2008). However, the Supreme Court recently held that the FAA always requires courts to stay, rather than dismiss, the proceedings if one of the parties requests a stay. Smith v. Spizzirri, 601 U.S. 472, 478 (2024); 9 U.S.C. § 3 (providing that courts "shall" upon request stay the proceeding until the arbitration "has been had in accordance with the terms of the [arbitration] agreement").

Here, at step one of the Court's analysis, Plaintiffs do not dispute that the parties agreed to arbitrate their data-breach claims. (Doc. 40, pp. 2–10.) Rather, Plaintiffs contend that Defendant's Motion to Compel fails at the second step—arguing that the Court cannot enforce the Arbitration Agreements because they are unconscionable under Georgia law. (Id.) "[The Supreme Court of Georgia] has defined an unconscionable contract as one that 'no sane man not acting under a delusion would make and that no honest man would take advantage of,' one that is 'abhorrent to good morals and conscience,' and 'one where one of the parties takes a fraudulent advantage of another.'" Innovative Images, LLC v. Summerville, 848 S.E.2d 75, 83 (Ga. 2020) (quoting NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771 n.2 (Ga. 1996)). In determining whether a contract is unconscionable, "Georgia law recognizes both procedural and substantive unconscionability." Dale v. Comcast Corp., 498 F.3d 1216, 1219 (11th Cir. 2007) (citing Nelson, 478 S.E.2d at 771)). "Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." Caley, 428 F.3d at 1377 (citing

9

Nelson, 478 S.E.2d at 771). "To determine substantive unconscionability, courts focus on 'matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'" Dale, 498 F.3d at 1219 (citing Nelson, 478 S.E.2d at 772)).

Plaintiffs argue that the Arbitration Agreements "are substantively unconscionable and unenforceable because they include a class action waiver and preclude Plaintiffs and class members from recovering attorney's fees and costs, regardless of the amount of such fees and costs relative to the potential recovery."[2] (Doc. 40, pp. 1–2; see also doc. 37-3, pp. 3–4.) According to Plaintiffs, the agreements thereby have the effect of "preclud[ing] them from seeking relief for their harm" because "the attorney's fees and costs associated with resolving Plaintiffs' and class members' claims on an individual basis would be far 'too great' relative to the potential recovery." (Doc. 40, p. 10.) Plaintiffs contend that this makes the Arbitration Agreements substantively unconscionable under the rule, supposedly established in Dale v. Comcast Corp., that "a class action waiver should be deemed substantively unconscionable and unenforceable where (i) it does not allow for the recovery of attorney's fees and related costs and (ii) the cost of vindicating the claims would be 'too great' in relation to the potential recovery." (Id. at p. 6 (citing Dale, 498 F.3d at 1222–24).)

Defendant, on the other hand, rejects the argument that the Arbitration Agreements are invalid. (Doc. 47, pp. 4–11.) Defendant argues that the agreements are not unconscionable because both substantive and procedural unconscionability are required, and Plaintiffs have failed

---

[2] While decisions on the validity of an arbitration agreement are typically reserved for the arbitrator, the parties agree that the Court can properly consider the validity of the class action waiver here. (See doc. 37-1, pp. 14, 17; doc. 40, pp. 3–4.) Indeed, the Arbitration Agreements provide that "any determination as to the enforceability of the class, collective, and representation action waiver shall be made solely by a court." (Doc. 37-3, pp. 3–4.)

10

to show either. (Doc. 37-1, pp. 16–17; doc. 47, pp. 5–11.) Moreover, Defendant asserts, even if the Arbitration Agreements were unconscionable under Georgia law, the Court could not invalidate them. (Doc. 47, pp. 4–6.) Indeed, according to Defendant, the United States Supreme Court ruled in AT&T Mobility LLC v. Concepcion that state laws are an "obstacle to the accomplishment . . . [of the FAA]" when the laws would invalidate agreements for individual arbitration whenever class proceedings are economically necessary for the prosecution of small-dollar claims. (Doc. 47, pp. 4–5 (citing Concepcion, 563 U.S. at 352).) Defendant accordingly states that—even if the Court interprets Georgia law as making an agreement unconscionable when it requires prohibitively expensive, individual arbitration—the FAA preempts the Court from applying that interpretation to invalidate the Arbitration Agreements. (Id. at pp. 5–6.)

The Court agrees with Defendant and finds there is no basis for invalidating the Arbitration Agreements as unconscionable. Generally, "arbitration agreements precluding class action relief are valid and enforceable." Webb v. DoorDash, Inc., 451 F. Supp. 3d 1360, 1368 (N.D. Ga. 2020) (quoting Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 877 (11th Cir. 2005)). But "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." Dale, 498 F.3d at 1224. "Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns." Id.

To support their unconscionability argument, Plaintiffs rely on Dale v. Comcast Corp., 498 F.3d at 1216, and Jones v. DirecTV, Inc., 381 F. App'x 895, 895 (11th Cir. 2010) (per curiam). In both cases, the Eleventh Circuit Court of Appeals determined that a class action waiver in an arbitration agreement was substantively unconscionable—and thus unenforceable—where attorneys' fees and cost were not recoverable and the amount of recovery was negligible. Dale, 498 F.3d at 1222–24; Jones, 381 F. App'x at 896–97. But both Dale and Jones predate the United States Supreme Court's 2011 decision in AT&T Mobility LLC v. Concepcion. 563 U.S. at 333.

In Concepcion, the Supreme Court held that the FAA preempted a California judicial rule that made most class arbitration waivers unconscionable. 563 U.S. at 340, 352. The Supreme Court noted that the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Id. at 339 (citing Dr.'s Assocs, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). "[N]othing in [the FAA] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Id. at 343. "The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms" and "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Id. at 344 (internal quotations omitted) (alterations adopted); see also Preston v. Ferrer, 552 U.S. 346, 357 (2008) (quoting Moses, 460 U.S. at 22). The Supreme Court specifically stated that "[t]he dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Concepcion, 563 U.S. at 351 (internal citation omitted).

Thus, though Plaintiffs argue that the costs and fees of resolving their claims individually would be far too great relative to the potential recovery, the Supreme Court "specifically rejected the argument that class arbitration was necessary to prosecute claims 'that might otherwise slip through the legal system.'" Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 238 (2013) (citing Concepcion, 563 U.S. at 351). The Eleventh Circuit has since acknowledged the same. See Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1207 (11th Cir. 2011) ("[W]e now hold that, in light of Concepcion, the class action waiver in the Plaintiffs' arbitration agreements is enforceable under the FAA. Insofar as Florida law would invalidate these agreements as contrary to public policy (a question we need not decide), such a state law would 'stand[ ] as an obstacle to the accomplishment and execution' of the FAA, and thus be preempted.") (internal citations omitted); see also Pendergast, 691 F.3d 1224, 1234 (11th Cir. 2012) ("[This] appeal requires only a straightforward application of Concepcion and Cruz. We need not decide whether the class action waiver here is unconscionable under Florida law . . . because to the extent Florida law would invalidate the class action waiver, it would still be preempted by the FAA."); Kaspers v. Comcast Corp., 631 F. App'x 779, 783–84 (11th Cir. 2015) ("[T]o the extent [plaintiff] argues that the arbitration agreement is unconscionable and unlawfully exculpatory under state law because it disallows classwide procedures, that argument is foreclosed.") (internal quotations omitted) (alterations adopted). Likewise, the Court here need not decide whether Plaintiffs' alleged need to use class proceedings for their small-dollar claims makes the class action waiver—and by extension, the Arbitration Agreements—substantively unconscionable under Georgia law. Even if that were true, the FAA would preempt the invalidation of the agreements on that basis. Thus, the Court rejects Plaintiffs' only argument for substantive unconscionability.

13

Though Plaintiffs include a "Procedural [U]nconscionability" section in their Response in Opposition, Plaintiffs primarily argue that "the Court need not resolve procedural unconscionability if it finds substantive unconscionability" and "[p]rocedural unconscionability need not be decided at this time." (Doc. 40, pp. 10–15.) At most, Plaintiffs argue that "if 'a certain quantum' of procedural unconscionability is required," they have "more than satisfied" that requirement. (Id. at 13.) For this standard, Plaintiffs cite T.S. Kao, Inc. v. N. Am. Bancard, LLC, stating that, "[f]or a contractual provision to be unenforceable, courts generally require 'a certain quantum' of both procedural *and* substantive unconscionability." (Id. (quoting N. Am. Bancard, LLC, No. 1:16-CV-4219-SCJ, 2017 WL 8682258, at *2 (N.D. Ga. Dec. 15, 2017) (emphasis added)).) Thus, Plaintiffs' own argument seems to concede that unconscionability requires a finding of substantive unconscionability, and because the Court has already found that there is no substantive unconscionability, the analysis could stop here. Nevertheless, for the sake of completeness, the Court will address the merits of Plaintiffs' procedural unconscionability argument.

Plaintiffs argue that if "'a certain quantum' of procedural unconscionability is required," they have met that requirement by showing that they were unaware of Defendant's poor data security; that they lacked bargaining power when they agreed to provide their PII; and that their unawareness of the poor security deprived them of a "meaningful choice" when agreeing to arbitrate. (Id. at pp. 13–15.)

Plaintiffs' procedural unconscionability argument, unlike their substantive unconscionability arguments, does not necessarily "derive [its] meaning from the fact that an agreement to arbitrate is at issue." Concepcion, 563 U.S. at 339. To be sure, the FAA might not preempt the invalidation of the Arbitration Agreements if, as Plaintiffs allege, their lack of

14

knowledge as to Defendant's security rendered the Arbitration Agreements procedurally unconscionable. See, e.g., Bentley v. EFN W. Palm Motor Sales, LLC, 214 F. Supp. 3d 1299, 1303 (S.D. Fla. 2016) ("The [FAA] allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." (quoting Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002))). But, even setting aside whether procedural unconscionability alone can render an agreement unconscionable under Georgia law, Plaintiffs have failed to show the agreements were procedurally unconscionable. There is no authority to support Plaintiffs' contention that, because they did not know about the allegedly unsecure nature of Defendant's PII storage, the process surrounding the Arbitration Agreement was so deficient that it deprived them of bargaining power or a "meaningful choice."[3] Upon considering the relevant factors,[4] the Court finds there is no evidence that the Arbitration Agreements are procedurally unconscionable. The "demanding standard for satisfying procedural unconscionability . . . requires 'the complaining party' to prove 'that it was essentially defrauded in entering the agreement.'" Payne v. Savannah College of Art and Design, Inc., 81 F. 4th 1187, 1194, 1198 (11th Cir. 2024) (quoting Innovative Images, 848 S.E.2d at 83). Not knowing the full extent of Defendant's security measures does not amount to "essentially fraud" so as to render the Arbitration Agreements procedurally unconscionable.

---

[3] Indeed, Plaintiffs' awareness of Defendant's security when agreeing to provide PII is likely better addressed by areas of law other than "unconscionability." See, e.g., Irwin v. RBS Worldpay, Inc., No. 1:09-CV-0033, 2010 WL 11570892, at *6–7 (N.D. Ga. Feb. 5, 2010) (plaintiff sufficiently stated claim for breach of implied contract based on allegations that he would not have provided his personal information without defendant's implied agreement to protect it); see also Collins v. Athens Orthopedic Clinic, 849 S.E.2d 213, 216 (Ga. Ct. App. 2020).

[4] "In determining whether a contract is procedurally unconscionable, Georgia courts look to the following factors: 'age, education, intelligence, business acumen and experience of parties, their relative bargaining power, the conspicuousness of and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice.'" Caley, 428 F.3d at 1377 (quoting Nelson, 478 S.E.2d at 772).

Because Plaintiffs' substantive unconscionability arguments are preempted by the FAA, and the Arbitration Agreements are otherwise valid, Defendant's Motion to Compel Individual Arbitration and Stay Action is **GRANTED**.[5]

## II.     Defendant's Motion to Dismiss

Separate from Defendant's Motion to Compel Arbitration, Defendant also moved to Dismiss Dependent Plaintiffs' Consolidated Class Action Complaint. (Doc. 36.) The Motion to Dismiss focuses on Dependent Plaintiffs, Alexander Matousek and Haley Matousek, and Defendant seeks to dismiss their claims only "*[i]f the Court does not enforce arbitration as to these Plaintiffs*." (Doc. 36-1, pp. 1–2 (emphasis added).) Thus, not only does the Motion effectively withdraw itself if the Court grants Defendant's Motion to Compel but also any further analysis into Defendant's Motion to Dismiss would undermine the purpose of arbitration. See Epic Sys. Corp., 584 U.S. at 509 ("[T]he virtues Congress originally saw in arbitration, its speed and simplicity and inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was meant to displace."); Preston, 552 U.S. at 357 (the purpose of the FAA is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible" (quoting Moses, 460 U.S. at 22)). Because the Court ordered individual arbitration

---

[5] Additionally, no Plaintiff objects to being bound by the Arbitration Agreement on any grounds other than unconscionability. Namely, Dependent Plaintiffs make no argument about why the Arbitration Agreements might not apply to them the same as it would to other Plaintiffs. (See generally doc. 40; see also doc. 37-1, pp. 19–22 ("The Non-Signatory Plaintiff-Dependents Are Likewise Bound to Individually Arbitrate Their Claims[.]"). In other words, Dependent Plaintiffs do not object to the argument that, as non-signatory beneficiaries, they are bound by their mother's (Plaintiff Constance Matousek) Arbitration Agreement. (Id.) "A party's failure to respond to any portion or claim in a motion indicates such portion, claim[,] or defense is unopposed. When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." State Farm Mut. Auto. Ins. Co. v. Robert Eugene Marshall & Thomasina Parks, 175 F. Supp. 3d 1377, 1385 (S.D. Ga. 2016) (quoting Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014)) (alterations adopted); see also S.D. Ga. L.R. 7.5 ("Failure to respond . . . shall indicate that there is no opposition to a motion."). Because Plaintiffs' only argument against individual arbitration (unconscionability) fails, the Court's Order compelling individual arbitration applies to all Plaintiffs, including Dependent Plaintiffs.

as to all Plaintiffs, Defendant's Motion to Dismiss Dependent Plaintiffs' claims is no longer applicable and is thus **DENIED without prejudice**.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion to Compel Individual Arbitration and Stay Action. (Doc. 37.) The Court **ORDERS** the parties to individually submit the underlying dispute to arbitration in accordance with the Arbitration Agreements. In addition, the Court **DIRECTS** the Clerk of Court to **STAY** and **AMINISTRATIVELY CLOSE** this case. Because the Court grants Defendant's Motion for Individual Arbitration, the Court **DENIES without prejudice** Defendant's Motion to Dismiss Dependent Plaintiffs' Consolidated Class Action Complaint. (Doc. 36.) The parties are **DIRECTED** to file a joint report on the status of the arbitration proceeding **NINETY (90) DAYS** from the date of this Order, every **NINETY (90) DAYS** thereafter, and within **TEN (10) DAYS** of completion of arbitration proceedings.

**SO ORDERED**, this 14th day of March, 2025.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA